Shaw C. J.
Though the amount in controversy in the present action is small, it involves a question of considerable practical importance, upon which there is no judicial decision precisely in point. It must, therefore, bé decided upon its own principles, and by a just analogy to other well settled cases.
It is an obvious principle of natural justice, to which the rules of both law and equity ought to conform, so far as it can be done without too great a departure from those forms of proceeding,' founded in convenience, which have been established in practice, that current accounts and mutual demands, of a like nature, as far as they go, should compensate and extinguish each other, and that the balance only constitutes a real debt between the parties. Indeed it would be generally found in practice, where there are items of cash, goods and services, on one side, and cash, goods and services on the other, that though in form and in terms, no item on one side can be shown to be a payment of any item on the other, yet each party has a tacit reference to the existing counter demand of the other, and looks not to his right of action in the first instance, as upon a single and distinct contract, but to an account and settlement.
The general principle of equity is stated by Lord Mansfield, in Green v. Farmer, 4 Burr. 2220. “ Natural equity says, that cross demands should compensate each other, by deducting the less sum from the greater; and-that the difference is the *401 only sum which can be justly due.” He then proceeds to show, to how great an extent positive law has intervened to enforce this rule of equity, as in cases of bankruptcy, of liens, of set-off, and others, where the mutual rights of the parties can be adjusted in one suit, and the necessity of separate actions avoided.
The same principle has been kept in view, here ; as in the case of the settlement of insolvent estates, and an extension of the right of set-off, not only to mutual accounts, but to judgments and even to executions.
It would seem therefore to be required by a regard to justice, to good faith and to truth, where a party has a demand against another who has at the same time a valid and undisputed demand against him, of a smaller amount, that be should not sue and arrest or attach for the whole debit side, and leave the other party to his action on his counter demand, but that he should, according to the truth and equity of the case, give the credit, and sue for the balance.
This would also seem to be required by another system of positive rules, provided by statute, those, namely, which limit and regulate the jurisdiction of courts, by the amount of the demand. A justice of the peace, for instance, has jurisdiction only in cases where the demand does not exceed twenty dollars, and the Court of Common Pleas .has final jurisdiction, where it does not exceed one hundred dollars. In these cases, if the creditor may not safely bring his action for the balance, but may be sued in his turn for the counter demand of his debtor, he may not only be subjected to increased costs of litigation, but perhaps fail in his suit, for. want of having shaped his action, in the declaration, the ad damnum, and the arrest or attachment, with a view to the whole debit side of his account.
That a creditor is bound in consciencé and equity at least, to bring his action for the balance, and not attach property or demand bail for the whole debit side of his account, when there is a balance only due, and when he knows or has the means of knowing of the existence and particulars of the counter demand, and that he is bound in such case to give credit, seems to be settled by authority.
*402 In a nisi prius case, Brown v. Pigeon, 1 Campb. 594, it was held, that where the one holding the smaller demand, had arrested the other, after suit commenced against himself, it was not a malicious arrest; but in that case there had been an order in the action to stay proceedings without costs, which in effect amounted to a defence.
But in a later case, where A. arrested B. for twenty pounds, knowing that upon the balance of their mutual dealings, there were but five pounds due to him, it was held that the arrest was malicious and without probable cause. Austin v. Debnam, 3 Barn. & Cressw. 139 ; S. C. 4 Dowl. & Ryl. 653 ; Dronefield v. Archer, 5 Barn. & Ald. 513.
In a recent case, in this Commonwealth, the same principle was in effect settled.
It was contended for the defendant in an action for a malicious prosecution, that where there are mutual dealings, bringing an action on one side only of the account, will not be evidence of malice. But, say the Court, “ this will depend on the circumstances. If the party has no means of knowing the credit side, and his object is merely to have a settlement of the account, the action will not be malicious ; but if a partner, having opportunity to examine the books of the firm, brings such an action when the balance is in truth against him, it may be evidence of malice.” Pierce v. Thompson, 6 Pick. 196.
Here it is manifest, that the circumstance relied upon to render the action malicious, was the knowledge of the state of the account, and the case of partners is put only by way of instance. But if the state of the accounts were equally well known in any other mode, as if the accounts had been mutually rendered, and agreed to, or received without objection, the rule would be the same. And if the action would be malicious, where the balance is against the party suing, it would seem to follow, that the arrest would be malicious, if made for a large debit side of an account, when there was a small balance due.
It has often been held in this State, and is indeed common practice, that where an account is stated, by debiting and crediting, and the balance is sued for, and judgment rendered for the balance, the defendant is bound by such credit, and cannot *403 afterwards bring an action on the same demand. In the case cited in the argument, Minor v. Walter, 17 Mass. R. 237, it was decided, that such a credit is not conclusive as to the amount or value of the goods or services credited in the account. But such credit, after judgment, must be taken to be a payment pro tanto, and if credited at the just value, will bar a cross action for the amount; if not credited at the value, will be a payment pro tanto, to be allowed in the assessment of damages.
Still the question recurs, whether the crediting the demand in account before judgment, can be relied on by way of defence ; and we think that under the limitations and qualified tions which this case presents, it can. These qualifications are, that the defendant has a larger valid and subsisting demand against the plaintiff for goods, services, or cash, constituting items proper for an account, upon which he has a present right of action, that he has credited the demand of the plaintiff for goods and services at their full and fair value, that he had commenced his suit, on an account on which credit was thus given previously to the commencement of the plaintiff’s suit, and was, in good faith, prosecuting it to judgment when the plaintiff’s suit was commenced.
It is said that such a credit is not a tender ; true it is not a tender, but it is in some respects like a tender. Such a credit, after judgment, is not strictly a payment, but it is similar in some respects to a payment, and it is allowed to enure by way of payment, because it can avail the party in no other way. So the foreclosure of a mortgage is in no strict legal sense a payment ; yet inasmuch as it would be inconsistent with the plain principles of justice, for the mortgagee to hold the land, and yet receive the full amount of his debt, and as the debtor is precluded by force of the statute from redeeming his land, the courts have said, as a rule plainly resulting from the operation of the statute, that the value of the land shall enure by way of payment; and as there is no act of the parties, ascertaining this value, it shall be fixed by appraisement.
But it is said, that after the defence has been established, the plaintiff in the counter suit may discontinue and so the *404 whole matter may be left unsettled. This objection deserves some consideration.
It is true, that the plaintiff in that suit may discontinue, and what would be the consequences injurious to the defendant ? The defendant would recover his costs, which in contemplation of law constitute an indemnity to him thus far.
The case supposes, that the plaintiff in the counter suit has a valid present demand, to a larger amount than that of, the defendant, the- plaintiff in this suit, and that the present plaintiff’s demand has been credited to its full value and amount. Should that plaintiff then renew his suit, without giving the credit, the defendant has an admission under the plaintiff’s hand by the credit in account, which will be good evidence of confession whenever such suit is renewed, if it should be done.
But to this it is objected, that in the mean time the accounts remain unsettled and that this is an inconvenience to which the present plaintiff ought not to be subjected. To this it may be answered, that the rule now laid down applies only to a case where the plaintiff had previously • commenced his suit and whilst he is bond fide prosecuting it to judgment. Should he discontinue, it would be like a case of failure of readiness to pay after a tender; it would no longer operate as a bar, and the plaintiff would then have his right of action.
It is hardly possible to imagine a case, where an action, brought like the present, upon an admitted demand, credited to its full amount in a counter account admitted to be valid and of larger amount, and suit actually commenced upon it and pending, can be founded upon any good motive, or tend to subserve any useful purpose ; but on the contrary, it can generally proceed only from a vexatious purpose, to subject the adverse party to the costs of useless litigation.
Believing that the principle upon which this defence was founded, will, in its application, tend to the advancement of justice, to avoid circuity of action, and to check useless and vexatious litigation ; that it fairly results from other useful and beneficial provisions, and that it violates no established technical rule of law ; we are of opinion that the instruction given to the jury in the Court of Common Pleas was correct, and that the exceptions must be overruled.